UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DERRICK WHITERS,

          Plaintiff,

                                      Case No. 23-12161
                                      U.S. DISTRICT COURT JUDGE
                                      GERSHWIN A. DRAIN

v.

COLT BLAKER, *et al.*,

          Defendants.

_____/

**<u>OPINION AND ORDER GRANTING THE WELLPATH DEFENDANTS'
MOTION TO DISMISS [#78]; GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [#89];
AND GRANTING DEFENDANTS' EX PARTE MOTION FOR
ENLARGEMENT OF PAGE LIMITATION FOR REPLY BRIEF [#98]</u>**

    **I.     <u>INTRODUCTION</u>**

    Presently before the Court are the following motions: (1) Defendants
Wellpath, LLC ("Wellpath"), Brianna Behnke, Kari Mcavoy, Ashley Beraty, Dr. Jo
Ann Mitchell, and Shane Gibson's (collectively, the "Wellpath Defendants") motion
to dismiss [#78]; (2) all Defendants' motion for summary judgment [#89]; and (3)
all Defendants' ex parte motion for enlargement of page limitation for reply brief

[#98]. Upon review of the parties' submissions, the Court finds that oral argument will not aid in the disposition of these motions, and thus they will be decided on the briefs. *See* E.D. Mich. L.R. 7.1(f)(2). For the reasons that follow, the Wellpath Defendants' motion to dismiss [#78] is GRANTED; Defendants' motion for summary judgment [#89] is GRANTED IN PART AND DENIED IN PART; and Defendants' motion for enlargement of page limitation for reply brief [#98] is GRANTED.

## II.     BACKGROUND

### A. Factual Background

This is a prisoner civil rights case arising from medical care Plaintiff received while confined at Oakland County Jail ("OCJ"). At all times relevant to this case, medical services at OCJ were provided by Wellpath pursuant to a health services agreement between Defendants Wellpath and Oakland County.

Plaintiff was confined at OCJ in August 2022. On August 27, 2022, he slipped and fell in his cell shower. Upon hearing yelling from Plaintiff's cell, Defendant Deputy Colt Blaker responded to the incident and observed that one of Plaintiff's fingers was bent and swollen. Blaker then called OCJ's medical clinic and arranged for Plaintiff to be transported there for evaluation.

At the clinic, Plaintiff was evaluated by Defendant Brianna Behnke, an emergency medical technician employed by Wellpath. Behnke observed that

Plaintiff's finger was severely deformed, positioned abnormally, and unable to be moved. Behnke then contacted Defendant Kari Mcavoy, a nurse practitioner employed by Wellpath, who verbally ordered that Plaintiff be sent to the emergency room at McLaren Oakland Hospital ("McLaren") for "emergent conditions," namely, a "closed fracture" and "dislocation with joint pain." ECF No. 89-2, PageID.1622. Plaintiff was transported to McLaren that same day by Defendant Deputies Jonathan Bagwell and Adam Wilson. Blaker informed Defendants Deputy Vinnie Khammo and Sergeant Dale Brown of the incident and Plaintiff's transport to the emergency room.

At McLaren, Plaintiff was diagnosed with a fracture in his finger. McLaren's medical providers determined that surgery was necessary to repair Plaintiff's finger and scheduled the procedure for August 29, 2022. McLaren's patient discharge notes indicated that Plaintiff would require pain management upon his return to OCJ, and that he was otherwise cleared for discharge with no other emergent medical treatment required.

Upon his return to OCJ that same day, Plaintiff was again evaluated by Behnke. In a progress note, Behnke documented that Plaintiff's finger had been reduced and splinted, that Plaintiff was to "follow provider protocol for pain management," and that Plaintiff was to follow up with McLaren's orthopedic department. *Id.* at PageID.1646. Behnke spoke with Defendant Dr. Jo Ann Mitchell,

a doctor at the OCJ medical clinic who was employed by Wellpath, over the phone regarding Plaintiff's pain management. Dr. Mitchell verbally ordered for Plaintiff to be prescribed various pain medications. The progress note further notes that Plaintiff had been scheduled to see an OCJ medical provider at a "sick call" appointment regarding his "hospital return." *Id.* Behnke's progress note was "e-signed" by Defendant Shane Gibson, a nurse employed by Wellpath.

Plaintiff was seen by Dr. Mitchell at the scheduled "sick call" appointment on August 29, 2022. By the time of the appointment, Plaintiff had already missed his scheduled surgery. Dr. Mitchell first learned of Plaintiff's scheduled surgery during this appointment and directed Defendant Ashley Beraty, an administrative assistant employed by Wellpath, to contact McLaren to reschedule. Beraty accordingly scheduled Plaintiff to be seen by McLaren's orthopedic department on September 2, 2022.

During the "sick call" appointment, Dr. Mitchell also learned that Plaintiff had a current prescription for Plavix, a blood thinner, due to a stroke he suffered approximately six months earlier. Based on her medical judgment, Dr. Mitchell believed that the standard of care required that Plaintiff needed to stop taking Plavix for at least five days before undergoing surgery because operating while he remained on the medication posed a risk of excessive and potentially life-threatening bleeding. Accordingly, she sought to discuss Plaintiff's Plavix prescription with McLaren's

orthopedic surgeons prior to his surgery.

On September 2, 2022, Plaintiff was transported to McLaren for his scheduled appointment, where he was seen by orthopedic surgeons. The surgeons' office clinic notes indicate that Plaintiff "was trying to get scheduled for surgery and does not know why it did not happen," and that "[o]n further investigation, insurance authorization was unable to be obtained from the [emergency department] and patient needed to follow-up in clinic prior to surgery scheduling." ECF No. 89-2, PageID.1651. The surgeons also noted that it "would be nice" if Plaintiff could see a jail medical provider "prior to his surgery due to history of stroke and taking Plavix." *Id.* at PageID.1652. McLaren rescheduled Plaintiff's surgery for September 7, 2022.

Consistent with the orthopedic surgeons' recommendation, Plaintiff returned to the OCJ medical clinic for a follow-up appointment on September 6, 2022, where he was again seen by Dr. Mitchell. During that appointment, Dr. Mitchell learned that Plaintiff's Plavix prescription had not been discontinued. She determined that Plaintiff could not safely undergo the scheduled surgery and directed Beraty to call McLaren to reschedule. The surgery was rescheduled for September 14, 2022.

Plaintiff was released from OCJ custody on September 12, 2022, two days before his scheduled surgery. He did not return to McLaren for his scheduled surgery and instead presented to the emergency department at Trinity Health Oakland

Hospital ("Trinity Health") on September 12, 2022. Trinity Health's provider notes reflect that Plaintiff had been noncompliant with wearing his finger splint and that there was already callous formation at the fracture site. The treating physician attempted to reduce the fracture using the traction-countertraction method, but the attempt was unsuccessful, likely due to the callous formation. Plaintiff was provided with an aluminum finger splint and was instructed to wear it at all times. He was further advised that, because the fracture had already begun healing in a displaced position, he was at risk for chronic pain and other complications. Plaintiff was discharged that same day.

### B. Procedural History

Plaintiff initiated the present lawsuit on August 23, 2023. Pursuant to 28 U.S.C. § 1983, Plaintiff's Third Amended Complaint alleges deliberate indifference claims under the Eighth and Fourteenth Amendments against Blaker, Khammo, Behnke, Mcavoy, Richardson, Wilson, Bagwell, Brown, Beraty, Mitchell, Gibson, Wellpath, and Oakland County for their alleged "failure to provide prompt medical treatment for his serious medical condition, a broken finger, while he was detained in the Oakland County jail." ECF No. 51, PageID.456. The individual Defendants are sued in their individual capacities.

Wellpath filed a voluntary petition for Chapter 11 bankruptcy in the United States Bankruptcy Court for the Southern District of Texas ("the Bankruptcy Court")

on November 11, 2024. On May 1, 2025, the Bankruptcy Court issued its Confirmation Order which, among other things, discharged all claims, interests, and causes of action against Wellpath that arose before November 11, 2024, and permanently enjoined parties from commencing or continuing any action with respect to those claims or interests. It also established an opt-out "Third-Party Release" system that discharged claims and interests against certain "Released Parties," including Wellpath's current and former employees, unless the plaintiff timely opted out to preserve those claims. The Confirmation Order also provides that:

> The Third-Party Release is supported by good and valuable consideration, consensual as to all relevant parties, including all Releasing Parties, and such parties (i) were provided notice of the Chapter 11 Cases, the Plan, the deadline to object to Confirmation of the Plan, and the scheduled Confirmation Hearing, (ii) received the Confirmation Hearing Notice, a Ballot, and/or the Non-Voting Status Notice, and (iii) **were properly informed that any Holder of a Claim against or Interest in the Debtors that did not check the "Opt Out" box on the applicable ballot or Opt Out Form or otherwise objected to the Third-Party Release, returned in advance of the Voting Deadline (or within 60 days after the Confirmation Date for incarcerated individuals), would be deemed to have expressly, unconditionally, generally, individually, and collectively consented to the release and discharge of all Claims and Causes of Action against the Debtors and the Released Parties.** Additionally, the release provisions of the Plan were conspicuous, emphasized with boldface type in the Plan, the Disclosure Statement, the Ballots, the Non-Voting Status Notice, the Confirmation Hearing Notice, and the Opt Out Form.

ECF No. 78-1, PageID.896 (emphasis added). Plaintiff did not opt out of the Third-Party Release.

The Wellpath Defendants move to dismiss Plaintiff's claims and causes of action against them, arguing that they are barred by the Confirmation Order. Moreover, all Defendants have moved for summary judgment.

### III. LAW AND ANALYSIS

#### A. The Wellpath Defendants' Motion to Dismiss

The Wellpath Defendants move to dismiss Plaintiff's claims and causes of action against them, arguing that they are barred by the Confirmation Order. Plaintiff does not dispute that his claims and causes of action against Wellpath must be dismissed under the Confirmation Order. Instead, he opposes dismissal of his claims against Wellpath's current and former employees—Defendants Behnke, Mcavoy, Beraty, Dr. Mitchell, and Gibson—on two grounds. First, Plaintiff contends that he never received an opt-out form. According to Plaintiff, "[i]f there is no proof Plaintiff received notice of the opt-out form, . . . then enforcing a Third-Party Release against Plaintiff would violate due process." ECF No. 82, PageID.1062. Second, Plaintiff argues that his § 1983 claims against the Wellpath employees "vindicate constitutional rights and cannot be bargained away in a corporate bankruptcy plan." *Id.* at PageID.1061.

These arguments amount to an impermissible collateral attack of the Bankruptcy Court's Confirmation Order. A collateral attack is "[a]n attack on a judgment *in a proceeding other than a direct appeal*." *United States v. Asakevich*,

810 F.3d 418, 423 (6th Cir. 2016) (alterations and emphasis in original). It is well-settled that a bankruptcy court's "[c]onfirmation of a plan of reorganization constitutes a final judgment in bankruptcy proceedings" and "has the effect of a judgment by the district court." *Browning v. Levy*, 283 F.3d 761, 772 (6th Cir. 2002) (citation omitted). The collateral attack doctrine recognizes that "[i]t is for the court of first instance to determine the question of the validity of the law, and until its decision is reversed for error by orderly review, either by itself or by a higher court, its orders based on its decision are to be respected." *Celotex Corp. v. Edwards*, 514 U.S. 300, 313 (1995) (citation omitted).

Here, the Confirmation Order is a final judgment. Plaintiff's contention that the Third-Party Release cannot be enforced against him because he never received an opt out form calls into question the Bankruptcy Court's determination, set forth in its Confirmation Order, that affected claimants, including Plaintiff, received adequate notice of the Third-Party Release and the consequences of failing to opt out. Thus, Plaintiff's challenge is, in essence, a collateral attack on the Confirmation Order, which the Court cannot entertain.

The same is true of Plaintiff's contention that the Third-Party Release cannot encompass his claims against the Wellpath employees because those claims "vindicate constitutional rights and cannot be bargained away in a corporate bankruptcy plan." ECF No. 82, PageID.1061. That assertion challenges the

9

Bankruptcy Court's approval of the Third-Party Release and its determination that the release extends to *all* claims and causes of action, including those asserted by Plaintiff against the Wellpath employees in the present action. Whether the Bankruptcy Court correctly approved a plan containing such a release is not an issue this Court may revisit.

For these reasons, the Court finds that the Confirmation Order bars Plaintiff from pursuing his claims and causes of action against the Wellpath Defendants. Accordingly, the Wellpath Defendants' motion to dismiss is granted. The Court will dismiss Plaintiff's claims against the Wellpath Defendants without prejudice to give him the option to attempt to pursue these arguments in the Bankruptcy Court or through the appellate process.

## B. Defendants' Motion for Summary Judgment

All Defendants move for summary judgment on Plaintiff's deliberate indifference claims. Given that the Court has found that dismissal of Plaintiff's claims as to the Wellpath Defendants is appropriate, the motion for summary judgment will be denied as moot as it relates to them. The motion will be adjudicated only as it relates to the remaining Defendants: Blaker, Khammo, Richardson, Brown, Wilson, Bagwell, and Oakland County.

### i.  Standard of Review

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate

"if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if its resolution will affect the outcome of the lawsuit." *Martingale LLC v. City of Louisville*, 361 F.3d 297, 301 (6th Cir. 2004) (citation omitted). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Ultimately, the court must evaluate "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Rocheleau v. Elder Living Const., LLC*, 814 F.3d 398, 400 (6th Cir. 2016) (citation omitted).

The moving party has "the burden of showing the absence of a genuine issue as to any material fact." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). However, "the plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff." *Wixson v. Dowagiac Nursing Home*, 87 F.3d 164, 169 (6th Cir. 1996) (citation omitted). The court must view the facts, and draw reasonable inferences from those facts, in the light most favorable to the non-moving party. *Rocheleau*, 814 F.3d at 398.

## ii.   Deliberate Indifference

The Supreme Court has recognized that "deliberate indifference" to the

11

serious medical needs of prisoners constitutes "unnecessary and wanton infliction of pain" and is therefore "proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation omitted). "The Eighth Amendment's prohibition on cruel and unusual punishment generally provides the basis to assert a § 1983 claim of deliberate indifference to serious medical needs, but where that claim is asserted on behalf of a pre-trial detainee, the Due Process Clause of the Fourteenth Amendment is the proper starting point." *Phillips v. Roane Cnty.*, 534 F.3d 531, 539 (6th Cir. 2008). The Sixth Circuit has recognized that the "deliberate indifference" framework that applies to such claims brought under the Eighth Amendment also applies to those brought by pre-trial detainees under the Fourteenth Amendment. *Griffith v. Franklin Cnty.*, 975 F.3d 554, 567 (6th Cir. 2020) (citations omitted).

iii.  Plaintiff's Deliberate Indifference Claims Against Blaker, Khammo, Richardson, Brown, Wilson, and Bagwell

Plaintiff asserts deliberate indifference claims against Blaker, Khammo, Richardson, Brown, Wilson, and Bagwell, all of whom were employed by Oakland County at all times relevant to this case. To prevail on a deliberate indifference claim against a government official, a plaintiff must make two showings: one objective, one subjective. *Spears v. Ruth*, 589 F.3d 249, 254 (6th Cir. 2009). To satisfy the objective component, "the detainee must demonstrate the existence of a sufficiently serious medical need." *Id.* (citation omitted). As for the subjective component, "the detainee must demonstrate that the defendant possessed a sufficiently culpable state

of mind in denying medical care." *Id.* (citation omitted). A defendant has a sufficiently culpable state of mind if he or she knows of and disregards an excessive risk to inmate health or safety, requiring that the defendant was both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and actually drew the inference. *Id.* at 255. "[A]n official who was unaware of a substantial risk may not be held liable under the Eighth Amendment, even if the risk was obvious and a reasonable prison official would have noticed it." *Morgan v. Wayne Cnty.*, 33 F.4th 320, 327 (6th Cir. 2022) (cleaned up). Instead, the official must have had "actual knowledge" of the substantial risk of serious harm. *See Jones v. Bottom*, 85 F.4th 805, 814-15 (6th Cir. 2023) (citation omitted).

"[I]n cases where prison officials actually knew of a substantial risk to inmate health or safety, they may be found free from liability if they reasonably respond to the risk, even if the harm ultimately was not averted." *Harrison v. Ash*, 539 F.3d 510, 519 (6th Cir. 2008) (cleaned up). Consistent with this principle, the Sixth Circuit has recognized that a "non-medically trained officer does not act with deliberate indifference to an inmate's medical needs when he reasonably deferred to the medical professionals' opinions." *McGaw v. Sevier Cnty.*, 715 F. App'x 495, 498 (6th Cir. 2017) (cleaned up). "[I]n a situation where a non-trained officer defers to a medical professional's judgment, absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a

13

non-medical prison official will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." *McGaw v. Sevier Cnty.*, 715 F. App'x 495, 498 (6th Cir. 2017) (cleaned up).

Moreover, a plaintiff "need not show that the defendant acted with the very purpose of causing harm, but must show something greater than negligence or malpractice." *Winkley v. Madison Cnty.*, 893 F.3d 877, 891 (6th Cir. 2018); *see also Rouster v. Cnty. of Saginaw*, 749 F.3d 437, 446-47 (6th Cir. 2014) ("The subjective requirement is designed 'to prevent the constitutionalization of medical malpractice claims.'"). "The standard, then, has generally been equated with one of 'recklessness.' " *Winkley*, 893 F.3d at 891 (citation omitted).

With respect to the objective component, Plaintiff contends—and Defendants do not dispute—that he suffered from an objectively serious medical need. Indeed, the evidence before the Court supports that contention. Plaintiff fractured his finger while detained at OCJ, and treating physicians determined that the injury required surgery. Viewing the evidence in the light most favorable to Plaintiff, a reasonable jury could find that Plaintiff suffered from an objectively serious medical need.

However, such is not the case with respect to the subjective component. For the reasons that follow, the evidence before the Court, construed in the light most favorable to Plaintiff, does not support a finding that Blaker, Khammo, Richardson, Brown, Wilson, and Bagwell knew of and disregarded a substantial risk of serious

harm to Plaintiff.

### 1. Deputy Blaker

Beginning with Blaker, the undisputed evidence before the Court shows that he responded to Plaintiff's slip and fall shortly after it occurred, and observed that Plaintiff's finger appeared bent and swollen. In response, Deputy Blaker contacted the OCJ medical clinic and arranged for Plaintiff to be transported there for evaluation. There is no evidence before the Court suggesting that he had any further interactions with Plaintiff after he was taken to the OCJ medical clinic, or that he subsequently learned of Plaintiff's diagnosis and need for surgery.

On these facts, no reasonable jury could find that Deputy Blaker knew of and disregarded a substantial risk of serious harm to Plaintiff. To the contrary, the record demonstrates that Blaker responded reasonably to Plaintiff's injury. Because there is no evidence that Deputy Blaker had actual knowledge of Plaintiff's need for surgery, he cannot be found to have been deliberately indifferent to that serious medical need. Accordingly, the subjective component of Plaintiff's deliberate indifference claim against Blaker cannot be satisfied, and as such, Blaker is entitled to summary judgment.

### 2. Deputy Khammo

Turning next to Khammo, the undisputed evidence before the Court demonstrates that, at the time of Plaintiff's slip and fall, he was assigned to supervise

the second floor of OCJ, where Plaintiff was housed. Although Khammo was notified of the incident, his knowledge was limited to the fact that Plaintiff had fallen, had been evaluated at the OCJ medical clinic, and was being transported to the emergency room. There is no evidence before the Court suggesting that he had any interactions with Plaintiff, or that he ever learned of Plaintiff's diagnosis and need for surgery.

On these facts, no reasonable jury could find that Khammo knew of and disregarded a substantial risk of serious harm to Plaintiff. Because there is no evidence that Deputy Khammo had actual knowledge of Plaintiff's diagnosis and need for surgery, he cannot be found to have been deliberately indifferent to that serious medical need. Accordingly, the subjective component of Plaintiff's deliberate indifference claim against Khammo cannot be satisfied, and as such, Khammo is entitled to summary judgment.

### 3. Deputy Richardson and Sergeant Brown

As for Deputy Richardson and Sergeant Brown, the undisputed evidence before the Court demonstrates that following Plaintiff's slip and fall, they were both notified of the incident and informed that Plaintiff needed to be transported to the emergency room. However, there is no evidence before the Court suggesting that they had any interactions with Plaintiff, or that they ever learned of Plaintiff's diagnosis and need for surgery.

16

On these facts, no reasonable jury could find that Deputy Richardson and Sergeant Brown knew of and disregarded a substantial risk of serious harm to Plaintiff. Because there is no evidence that they had actual knowledge of Plaintiff's diagnosis and need for surgery, they cannot be found to have been deliberately indifferent to that serious medical need. Accordingly, the subjective component of Plaintiff's deliberate indifference claim against Richardson and Brown cannot be satisfied, and as such, they are entitled to summary judgment.

### 4. Deputies Wilson and Bagwell

Finally, as to Wilson and Bagwell, the undisputed evidence before the Court shows that they transported Plaintiff to the McLaren emergency room on August 27, 2022, and remained in the room with him while he was examined. Viewing the record in the light most favorable to Plaintiff, a reasonable factfinder could conclude that, during that visit, Wilson and Bagwell learned that Plaintiff had been diagnosed with a fractured finger requiring surgery and that surgery had been scheduled for August 29, 2022. However, there is no evidence suggesting that Wilson and Bagwell subsequently learned that Plaintiff was not taken to his surgery appointment or that surgery had been delayed.

On these facts, no reasonable jury could find that Wilson and Bagwell knew of and disregarded a substantial risk of serious harm to Plaintiff. There is no evidence suggesting that they had actual knowledge that Plaintiff missed his surgery

17

appointment or that his care had otherwise been interrupted, and as such, they cannot be found to have been deliberately indifferent to Plaintiff's serious medical need. Accordingly, the subjective component of Plaintiff's deliberate indifference claim against Wilson and Bagwell cannot be satisfied. They are entitled to summary judgment.

In conclusion, the Court finds that, even viewing the evidence in the light most favorable to Plaintiff, no reasonable jury could find that We were deliberately indifferent to Plaintiff's serious medical need. Accordingly, they are entitled to summary judgment on Plaintiff's deliberate indifference claim.

iv.   Plaintiff's Deliberate Indifference Claim Against Oakland County

The Court now turns to Plaintiff's deliberate indifference claim against Oakland County. To prevail on a § 1983 claim against a municipality, a plaintiff must demonstrate that, "through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." *Alman v. Reed*, 703 F.3d 887, 903 (6th Cir. 2013) (citation omitted). A plaintiff can do so by showing that the municipality had a "policy or custom" that caused the violation of his rights. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). There are four methods of proving the existence of a municipality's illegal policy or custom: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate

18

training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citation omitted). Critically, however, "where there has been no showing of individual constitutional violations on the part of the [government officials] involved, there can be no municipal liability." *Baker v. City of Trenton*, 936 F.3d 523, 535 (6th Cir. 2019); *see also City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at the hands of the individual [government officials], the fact that the departmental regulations might have *authorized* the [constitutional violation] is quite beside the point.").

Here, Plaintiff alleges that Oakland County maintained a policy under which inmates who knew the dates of their scheduled offsite medical appointments would not be transported to those appointments for security reasons. According to Plaintiff, he missed his surgery appointments because of this policy. Without deciding whether this alleged policy is sufficient to support a *Monell* claim, the Court finds that Plaintiff's claim nevertheless fails because there has been no showing of an underlying constitutional violation by any of the government officials involved.

Specifically, the Court has found that Defendants Blaker, Khammo, Richardson, Brown, Wilson, and Bagwell were not deliberately indifferent. Those Defendants, however, are not the only government officials Plaintiff has sued in the present action. Although the individual Wellpath Defendants—Behnke, Mcavoy,

Beraty, Dr. Mitchell, and Gibson—are being dismissed from the present action pursuant to the Bankruptcy Court's Confirmation Order, they were alleged to have participated in the medical care giving rise to Plaintiff's deliberate indifference claim. It is well-settled that "private medical professionals who provide healthcare services to inmates at a county jail qualify as government officials acting under the color of state law for the purposes of § 1983." *Winkler v. Madison Cnty.*, 893 F.3d 877, 890 (6th Cir. 2018).

For the reasons that follow, the evidence before the Court, construed in the light most favorable to Plaintiff, fails to support a finding that any of the individual Wellpath Defendants were deliberately indifferent to Plaintiff's serious medical need. Thus, having failed to establish a constitutional violation on the part of any of the government officials involved, there can be no municipal liability against Oakland County.

### 1. Behnke

Beginning with Behnke, the uncontroverted evidence before the Court demonstrates that she had actual knowledge of a substantial risk of serious harm to Plaintiff. Following Plaintiff's slip and fall, Behnke evaluated Plaintiff's injured finger and observed that it was severely deformed, abnormally positioned, and lacked mobility. Behnke then contacted Mcavoy, who issued a verbal order directing that Plaintiff be transported to the McLaren emergency room for further evaluation

20

and treatment.

Behnke next encountered Plaintiff upon his return to OCJ from the emergency room that same day. She authored a progress note indicating that Plaintiff needed to follow up with McLaren's orthopedic department, and that he was scheduled to be seen by a jail medical provider the following day regarding his "hospital return." Behnke also contacted Dr. Mitchell regarding Plaintiff's pain management needs and obtained a verbal order for several pain medications. Viewing these facts in the light most favorable to Plaintiff, a reasonable jury could find that Behnke was aware of facts from which the inference could be drawn that Plaintiff faced a substantial risk of serious harm arising from his fractured finger and need for surgery, and that she drew the inference.

However, these undisputed facts also demonstrate that Behnke reasonably responded  to that risk. When Behnke saw Plaintiff following his return from the emergency room, she understood that he would be evaluated by the jail medical provider the next day regarding further treatment. There is no evidence before the Court suggesting that Behnke had any subsequent contact with Plaintiff or was otherwise informed that he was not taken to his scheduled surgery.

Accordingly, even viewing the evidence in the light most favorable to Plaintiff, the Court finds that no reasonable jury could find that Behnke consciously disregarded a serious risk of harm to Plaintiff's serious medical need. As such,

21

Behnke was not deliberately indifferent.

## 2. Mcavoy

As for Mcavoy, there is no evidence suggesting that she ever knew that Plaintiff suffered from a fractured finger requiring surgery. Instead, her involvement in the acts giving rise in this case was limited to discussing Plaintiff's injury with Behnke following his accident. Upon learning of the nature of Plaintiff's injury, Mcavoy ordered that Plaintiff be taken to the emergency room. In light of the information available to her at that time, Mcavoy's response was reasonable and does not support a finding that she consciously disregarded a substantial risk of serious harm to Plaintiff. There is no evidence before the Court suggesting that Mcavoy had any subsequent contact with Plaintiff or otherwise learned of Plaintiff's need for surgery.

Accordingly, even viewing the evidence in the light most favorable to Plaintiff, the Court finds that no reasonable jury could find that Behnke consciously disregarded a substantial risk of harm to Plaintiff's serious medical need. As such, Mcavoy was not deliberately indifferent.

## 3. Gibson

Turning next to Gibson, the uncontroverted evidence before the Court demonstrates that Gibson reviewed and electronically signed the progress note authored by Behnke following Plaintiff's return from the emergency room. Viewing

this evidence in the light most favorable to Plaintiff, a reasonable jury could find that Gibson was aware of facts from which the inference could be drawn that Plaintiff faced a substantial risk of serious harm arising from his fractured finger and need for surgery, and that he drew the inference.

The evidence, however, does not support a finding that Gibson consciously disregarded that risk. The progress note he reviewed and signed indicated that Plaintiff was scheduled to be evaluated by an OCJ medical provider the following day regarding further treatment. Thus, the information available to Gibson reflected that Plaintiff's serious medical need was being addressed through ongoing medical care. There is no evidence that Gibson ever interacted with Plaintiff or was involved in Plaintiff's treatment beyond reviewing and signing Behnke's progress note. Accordingly, even viewing the evidence in the light most favorable to Plaintiff, the Court finds that no reasonable jury could find that Gibson consciously disregarded a serious risk of harm to Plaintiff's serious medical need. As such, Gibson was not deliberately indifferent.

### 4. Dr. Mitchell

As for Dr. Mitchell, the Sixth Circuit has recognized that "[a] doctor is not liable under the Eighth Amendment if he or she provides reasonable treatment, even if the outcome of the treatment is insufficient or even harmful." *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (citations omitted). In instances where an inmate

received ongoing treatment and claims it was inadequate, he must show that the treatment was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Harrison v. Oliver*, No. 24-1815, 2025 WL 4664752, at *2 (6th Cir. Oct. 31, 2025) (citation omitted).

Here, the uncontroverted evidence before the Court does not support such a finding. Dr. Mitchell first learned of Plaintiff's need for surgery when she treated him on August 29, 2022, *after* his initial appointment had already passed. Rather than disregard Plaintiff's need for surgery, she directed Beraty to contact McLaren and reschedule the procedure, and Plaintiff was thereafter scheduled to be seen by McLaren's orthopedic department on September 2, 2022.

Also on August 29, 2022, Dr. Mitchell learned that Plaintiff had a Plavix prescription. She testified at her deposition that, in her medical judgment, the standard of care required discontinuing the medication for five days before surgery due to the risk of significant and potentially life-threatening bleeding during the procedure. Although she did not immediately discontinue Plaintiff's Plavix prescription, she explained that she first wanted to consult with McLaren's orthopedic surgeons regarding how they wished to proceed, as they were the ones ultimately performing the surgery.

At Plaintiff's September 2, 2022 appointment at McLaren, the surgeons noted that it "would be nice" for Plaintiff to be evaluated by the OCJ medical clinic before

his surgery due to his stroke history and Plavix prescription. When Dr. Mitchell saw Plaintiff on September 6, 2022 prior to his September 7, 2022 surgery appointment, she learned that he had not been taken off Plavix. Exercising her medical judgment, she directed Beraty to reschedule the surgery once again to permit discontinuation of the medication for the appropriate period. The surgery was subsequently rescheduled for September 14, 2022. Plaintiff was released from OCJ custody prior to that date.

These facts, even viewed in the light most favorable to Plaintiff, do not support a finding of deliberate indifference. At every stage, Dr. Mitchell responded to Plaintiff's medical needs, arranged follow-up care, and exercised medical judgment regarding the risks of surgery while Plaintiff remained on Plavix. Nothing in the record suggests that Dr. Mitchell's treatment decisions were so deficient as to shock the conscious or offend fundamental fairness.

For these reasons, the Court concludes that Dr. Mitchell was not deliberately indifferent to Plaintiff's serious medical need.

### 5. Beraty

Finally, no reasonable jury could find that Beraty was deliberately indifferent to Plaintiff's serious medical need. Beraty was an administrative assistant employed by Wellpath whose responsibilities included scheduling outside medical appointments for inmates. In that capacity, she did not make medical decisions

regarding inmate care, treatment, or the need for surgery or other offsite services. Rather, those determinations were made by Wellpath's medical providers, including physicians and nurse practitioners. In scheduling Plaintiff's surgery appointments, Beraty acted at the direction of Dr. Mitchell. Given her administrative role and lack of medical training, it was entirely reasonable for Beraty to rely on the judgment of the treating professionals responsible for Plaintiff's care. Accordingly, Beraty was not deliberately indifferent.

For these reasons, the Court concludes that, having failed to establish a constitutional violation on the part of any government officials involved in the acts underlying Plaintiff's *Monell* claim, there can be no municipal liability against Oakland County. As such, Oakland County is entitled to summary judgment.

In sum, Defendants' motion for summary judgment is granted in part and denied in part. It is denied as moot with respect to the Wellpath Defendants, and granted with respect to all other Defendants.

### C. Defendants' Ex Parte Motion for Enlargement of Page Limitation for Defendants' Reply Brief

Defendants moved for a three-page enlargement of the seven-page limitation on reply briefs set forth in Local Rule 7.1(d). This motion was filed concurrent with Defendants' reply brief, and Plaintiff concurred in the relief sought. Given that the Court granted the parties enlargements beyond the 25-page limitation for their respective motion and response, the Court finds it appropriate to grant the present

motion.

## IV.   **CONCLUSION**

Based on the foregoing, the Wellpath Defendants' motion to dismiss [#78] is GRANTED; Defendants' motion for summary judgment [#89] is GRANTED IN PART AND DENIED IN PART, and Defendants' motion for enlargement of page limitation for reply brief [#98] is GRANTED.

SO ORDERED.

Dated: June 10, 2026                                   /s/Gershwin A. Drain
                                                    GERSHWIN A. DRAIN
                                                    United States District Judge

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on June
10, 2026, by electronic and/or ordinary mail.
/s/ Marlena Williams
Case Manager